May it please the Court, Cal Potter on behalf of Correctional Officer Dwayne Jensen of Las Vegas, Nevada. Knowing that the Court is familiar with the facts of this case, I would like to focus on why the District Court erred in granting summary judgment and also discuss the impact of Garcetti v. Sabalas. And it is our position that Garcetti v. Sabalas, in terms of looking at whether in fact its official conduct is much different, the District Attorney was compelled in Garcetti to write out the memorandum, which he did, in terms of disposing of the case. Paul, let me ask you a question on that. I mean, you may be right. I don't know. I mean, and that's part of the problem. I don't know. Because neither one of you obviously developed the record in the District Court with reference to Garcetti, since it didn't exist. Correct. Not surprisingly. So what's your reaction to the possibility of simply remanding this thing to the District Court to revisit in light of Garcetti? Well, that's certainly one of the options of the Court, since the trial court did not have the benefit of Garcetti either. But I believe that what Garcetti says is the dispositive factor is not that Sabalas expressed his views inside of his office, rather than publicly, nor that the memo concerned the subject matter of his employment. The controlling factor is Sabalas' expressions were made pursuant to his official duties. Well, does he have a duty, if a prisoner comes and says, look, they're pepper spraying us, I've seen this officer pepper spray, does he have a duty to say, okay, here's the official, if you want to make a complaint, here's how to make a complaint? Is there anything in the manual that would tell him that that's his responsibility? Well, the distinction here was that, yes, officers can take complaints. Officers, likewise, can make complaints. Mr. Jensen, or Correctional Officer Jensen's argument was that he did not see it. He saw the aftermath, and therefore, being an officer that has had, he believes, scrutiny and being treated differently because in the past he's been willing to be a whistleblower and make statements against officers. He believed that it would be black or whitewashed, and so he made the effort to have the inmate make the report to an officer on a different shift, knowing that that officer's lieutenant would investigate. And indeed, the Lieutenant O'Rourke did investigate, and that was the ‑‑ But isn't that ‑‑ how do we know whether that's within the scope of his duties or not? If it says in the manual that if an inmate expresses a complaint of official misconduct, the officer shall tell the inmate or advise the inmate the channels for which they are to proceed, if it said that in the manual, wouldn't you say that at least that statement that he made to the inmate was within the scope of the Garcetti decision? It would be if that's what it says and that's what occurred, but that's not what happened in this case. Instead, what he did is he asked to go through a different direction so that it wouldn't be covered up. And I think based upon that, I mean, that's part of the argument that was previously made even before Garcetti, is that, you know, there's no public action, there's no movement on the part of my client to go to the newspaper and so what we were focusing on was this court's decision in Nunez v. Davis, which was another First Amendment case dealing with a judge in north Las Vegas who wouldn't allow his oppositions within the court, people who worked as court workers who had not supported his campaign, judges are elected there in Las Vegas, that he wouldn't allow them to go to any type of seminars. And once again, the arguments were made that the clerk allowed other people to come who had not been supporters of the judge and the arguments were made, the same kind of arguments, well, you know, it's a situation where there's no public statements, there's just symbolic speech and that's clearly what we have here in terms of Dwayne Jensen. His actions, I believe, were protected as symbolic speech. He went against the conspiracy of silence. He did the right thing. These officers were pepper-spraying individuals. Wait, wait. If I may, I just want to interrupt you to get a focus here. The speech that you claim is protected by the First Amendment is the exchange between your client and an inmate of the prison, right? In the jail, Your Honor. In the jail. And the speech that you claim is protected is words to the effect that he should make a report. That's correct. And he doesn't tell the inmate what to say. He don't know whether it's true. He doesn't make a representation of fact. He just says to the inmate, make a report to this guy on the other shift. Now, that doesn't tell the public much. It doesn't tell anybody much about what might be wrong. And there's even a dispute of fact as to whether or not he ever made the complaint. Am I right? Mr. Reinhart testified that he did make the complaint. And somebody else testified he didn't. Well, that's correct. There's a dispute of fact about that. But in the context of the First Amendment, it doesn't matter, does it? Because he's either protected in his speech to this inmate or not. He isn't. But there were three arguments made. And one of them is, of course, prior to Garcetti. All three of the arguments were made prior to Garcetti. But one is the speech that you're talking about. The second is a conversation between Sergeant Kelly and Officer Ostrander down at another correctional facility where they talk about the fact that Dwayne Jensen had gone and told this inmate to make the complaint. And as a result of that, he believed he had also saved another inmate's life, Macklemore, by getting treatment. That doesn't matter, though. Or does it? Because the free speech we're talking about is only between your client and the inmate. And the substance of that is report it to a guy. Now, that's pretty bland, is it not? No, it's not, Your Honor. And the duty of the federal courts is to make sure that we have individuals' amendments protected. More importantly here, in terms of public policy, the court should be looking at the type of action that was occurring in that facility, the main correctional facility. Your client didn't report anything. He just told an inmate, go tell the other guy. Because he didn't want it whitewashed. He didn't want it swept under the rug. He wanted it dealt with in a fashion that would get the individuals either treated appropriately or to stop the treatment to the inmates. And that's what was the intent of Mr. Jensen making that argument. And then the third part was, as he went to Lieutenant Baker, I think clearly when Lieutenant Baker is the internal affairs officer and comes forward and makes that interview, that's the only time it's really in his official capacity. And I would submit to you that based upon the holdings in Nunez v. Davis controlling law in this circuit, that his actions were symbolic speech, and that he was not going to be going along, and that he, in fact, broke the conspiracy of silence, which was acknowledged by the actions of Sergeant Kelly and Osorio Stranger. And as a result of that, started to retaliate and filed the internal affairs complaint against him without any basis. I just want to make sure I have three times he says anything about this. First is to the inmate, right? Correct. The third is to the one he's interviewed. Correct. And the one in the middle is when he's in the break room or something. He says, oh, I saved the guy's life, so therefore I bought myself a Rolex watch. Correct. But none of these times does he go to authorities and say, I saw the aftermath of this. I think this is something that should be investigated or anything like that, right? Well, the sergeant is his sergeant at the time that he's in the having lunch at the Mojave Stewart jail. So and he's ultimately the one that files the internal affairs complaint against Mr. Jensen. So he acknowledged that the that he had gone and told the inmate to file the charges. Right. But there he's not saying to the other officers, look, this is a terrible situation. You've got to report this stuff. I reported it. What he's doing is he's explaining that he thought he did something good and therefore he got himself a Rolex watch. That's correct. And but he acknowledged when there was a discussion that, in fact, he was the one that put the inmate up to go ahead and filing the charges. And I submit that those are the facts, that it is symbolic speech, that it shows that he was going against the conspiracy of silence and he thought he was doing it for the right reasons. And I would reserve whatever time I have for a couple of comments. Thanks. Truly. Mr. Angula. Good morning, Your Honors. May it please the Court. My name is Peter Angula. I represent the Las Vegas Metropolitan Police Department, Sergeant Patrick Kelly. The primary question here is whether or not this was speech conduct. As the Court has requested, we looked at the case of Garcetti v. Sobalos. And in response to your question to Mr. Potter about whether the record is fully developed, what is developed in the record is the admission by Mr. Jensen that there was a policy in the department, an acknowledged policy, that if officers were aware of wrongdoing, they had a duty to report it. We submit initially that his conduct that day was not speech. It did not engage with public discourse. It did not engender a debate among employees as to the propriety of actions or to reveal wrongdoing. It was an encouragement for an individual as to, of course, they could follow if they saw something with which they disagreed. That just isn't the kind of conduct or speech that the First Amendment is designed to protect. What about what he said in the lunchroom? Again, what he said in the lunchroom was simply a congratulatory. The fact that he responded to an inmate who was in medical need and got him medical care isn't a statement of public concern. It's not a statement that deals with an overarching problem within the correctional facility or the fact that the nurse, say, for example, walked away and he said, you know, I had to give her CPR because these nurses never do anything. That would be the kind of discussion that maybe might raise its level a little bit. But the fact of that, in fact, it's one of the things that we noted in brief, was that was what brought Sergeant Kelly to IAB. He didn't have personal knowledge about whether the watch had been purchased or not from an inmate. But he'd received reports from several other correctional officers that that had occurred, officers who told him that an inmate had told them that they had sold the watch to Officer Jensen. Because he had the duty, the duty that Officer Jensen acknowledged existed, he then went and filed an internal affairs complaint and had it investigated. Officer Jensen had the ability to do that. He had the obligation to do that. He chose not to. And Judge Jones, in looking at the matter, agreed that his conduct that day in simply talking to an inmate and saying, well, you know, if you see this, you know, you ought to go file something about that, just doesn't rise to the level of the speech that the First Amendment is designed to protect. But even if the Court were to say, well, we think that might be speech, because there's the acknowledged obligation to report wrongdoing, at the very most, what you could say is that's what he was doing, telling someone to go get it reported so that it could be brought to light. This argument about this conspiracy of silence or whatever it is is unsupported in the record. Do you know where in the record does it show that he admitted or conceded that there was this policy? It would be surprising if a law enforcement agency didn't say to its members that you had to report illegal conduct. But where did he say that he admitted that that's part of their responsibilities? Your Honor, if I could, it's in our brief, and I'd be happy to pull that for the Court. It's in your brief. I can find it. We cite it in a footnote in the brief. Okay. It's in the factual section, I believe, where that's recited. At any rate, and so again, we come to this Court and we ask to affirm the decision of Judge Jones that this absolutely was not speech. There's no case that indicates that this kind of conduct, and that's really what it is, rises to the level of speech protected by the First Amendment. Even if the Court were to look at Garcetti, we submit that his actions were at best in line with his acknowledged duties and obligations, and accordingly, he had the duty to go ahead and report it, which arguably he did, which again falls directly within the four corners of Garcetti. The remainder of the brief are the arguments that would exist as to whether or not there was evidence of, in the record, a refutation of the evidence submitted by LVMPD that they would have engaged in the allegedly wrongful conduct anyway, which we think is more than established. The fact of eyewitness testimony that brought the IAB investigation from which he was vindicated, he suffered no injury from that. The alleged crappy assignments that he got and how they interplayed with one another and the reasons for that stand before this Court unrefuted, stood before Judge Jones unrefuted. And so even if the Court were to say, well, we think this might be speech, under the Pickering test, again, the Department's more than met its ability to refute the prima facie case, which would warrant summary judgment. And finally, Your Honors, as to the State law claims, I believe they've already been adequately briefed as to how the factual record clearly supports that those were properly dismissed also. And unless the Court has additional questions, I'll go ahead and sit down. Thank you, Your Honors. Thank you. Mr. Potter. Yes, ma'am. I would just reiterate that Nunez is post-Pickering, post-Connick, and it talks about situations such as this where you have symbolic speech. In this particular instance, the admission on their part that Sergeant Kelly didn't have any type of probable cause shows that, in fact, that the internal affairs investigation was not just, it wasn't based upon anything a police officer would normally do in terms of looking at facts and making the determination to file charges, that it came out of the same fact pattern that we talked about previously about in the lunchroom. And Kelly, at that point in time, in conjunction with the other officers, then filed the internal affairs complaint. Now, counsel has directed us to footnote 12, on page 12 of his brief, in which he says the appellant candidly admitted there existed a policy within the department which stated that if an officer knew or heard of misconduct, that officer had a duty to report it. Then he cites to the record. Do you think this record would be any different on remand? It would. But I think it's different than what their footnote talks about. Because what Mr. Jensen said is he saw the manifestations. He didn't see the acts. And he didn't see that, in fact, they had actually sprayed this stuff. But he believed that the inmate who had seen it could testify to it. Does that mean he should report it or not? No. And that was his position. He had no duty to report unless he actually saw the thing take place. What he reported was dealing with McNamore and McNamore's being sick and that, in fact, he had done the right thing. How does that fit into any alleged conspiracy of silence? If you don't see it, you don't have to talk about it? No. The conspiracy of silence is if you see it, you don't do anything about it. And that's essentially what you have here in this situation. And then Lieutenant O'Rourke is the one that confirmed it. Lieutenant O'Rourke's affidavit is a part of this. And what she said is it all went up all the way to the captain and the captain didn't do anything. Very well. Okay. Thank you, counsel. Both of you. The matter just argued will be submitted.
judges: Leavy, Rymer, Moskowitz